UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CRAIG B.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>**Defendant.** | Civ. No. 20-13004 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

  The plaintiff, Craig B., brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") of the Social Security Act ("SSA"). Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that Plaintiff was not disabled within the meaning of the SSA from December 31, 2011, the alleged onset date, through June 4, 2019, the date of the decision. Plaintiff claims that the ALJ's decision is not supported by substantial evidence. For the reasons below, I will affirm the Commissioner's decision.

1

## I. BACKGROUND[1]

Plaintiff applied for DIB and SSI in October 2016, alleging disability as of September 17, 2007.[2] (R. 213-25.) His application was denied initially and on reconsideration. (R. 73-74, 92.) Plaintiff then requested and obtained a hearing before an ALJ, at which he was represented by counsel. (R. 121-22.) On June 7, 2019, ALJ Krappa issued a decision denying disability at step five of the sequential evaluation, finding that, although Plaintiff could no longer perform his past relevant work, he is capable of adjusting to certain sedentary work that accommodates his limitations and exists in significant numbers in the national economy. (R. 7-26.)

The Appeals Council denied Plaintiff's request for review on July 20, 2020, rendering the ALJ's decision final. (R. 1-6.) Plaintiff now appeals that decision pursuant to 42 U.S.C. § 405(g).

## II. DISCUSSION

### A. Five-Step Standard of Awarding Benefits

To qualify for Title II DIB benefits and for SSI for disability, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 423(c).

---

[1] Certain citations to the record are abbreviated as follows:
    "DE __" = Docket entry in this case
    "Pl. Br." = Plaintiff's brief (DE 10)
    "Def. Br." = The Commissioner's brief (DE 11)
    "R. __" = Administrative Record (DE 7)

[2] At the hearing, Plaintiff amended his alleged date of onset to coincide with his date last insured: December 31, 2011. (R. 45.)

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR § 404.1520. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR § 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **RFC and Step 4:** Determine the claimant's "residual functional capacity" ("RFC"), meaning "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on his RFC, the claimant can return to his prior occupation. 20 C.F.R. § 1520(a)(4)(iv); *id.* § 404.1520(e)–(f). If not, move to step five.
>
> **Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§

404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

**B. Standard of Review**

For this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny,* 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir.

2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### C. The ALJ's Decision

ALJ Krappa undertook the five-step inquiry. Her conclusions are summarized as follows:

### Step 1

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date and proceeded to the second step. (R. 12.)

### Step 2

ALJ Krappa found that Plaintiff had the following severe impairments: disorder of the heart (history of congestive heart failure); diabetes; hypertension; disorder of the foot and ankle; obesity; depression; and anxiety. (*Id.*)

### Step 3

At step three, the ALJ concluded that Plaintiff's impairments, considered individually and in combination, did not meet or medically equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13.) First, the ALJ found that Plaintiff did not meet the requirements of Listing 1.02, Major Dysfunction of a Joint(s), because his impairments were "not characterized by gross anatomical deformity and chronic joint pain and stiffness" such that motion in the affected joints was "limited" or "abnormal" (*Id.*) Nor was Plaintiff unable to ambulate or perform "fine and gross" upper extremity movements effectively. (*Id.*)

Second, the ALJ found that Plaintiff did not meet the requirements of Listing 4.02, Chronic Heart Failure, because the record contained no evidence of systolic or diastolic failure. (*Id.*) In addition, even if the record did contain such evidence, the ALJ found that "the record d[id] not show that the evidence resulted in the criteria set forth in listing 4.02B." (*Id.*)

Third, the ALJ found that Plaintiff's mental impairments, both individually and in combination, did not meet or medically equal the criteria of Listings 12.04, Depressive, Bipolar, and Related Disorders, or 12.06, Anxiety and Obsessive-Compulsive Disorders, because they did not satisfy the "paragraph B" criteria. To satisfy "paragraph B" criteria, a claimant's mental impairments must cause either "one extreme or two marked limitations in broad areas of functioning." (R. 14.) In evaluating each area of functioning individually, the ALJ concluded that Plaintiff had no more than moderate limitations. (*Id.*)

The ALJ also concluded that the record evidence did not show that Plaintiff's mental impairments did not meet the "paragraph C" criteria. More specifically, the ALJ noted that the record could not show Plaintiff's impairments were "serious and persistent." (R. 15)

### Step 4 – Ability to Perform Past Work and RFC

The ALJ assessed the claimant's residual functional capacity (RFC) as follows:

> 5. After careful consideration of the entire record, I find that, on the date of the amended alleged disability onset date and date last insured, the claimant was capable of the exertional demands of sedentary work as defined under the Regulations; specifically, he was able to: lift/carry 10 pounds occasionally; stand/walk for 2 hours in an eight-hour workday; sit for 6 hours in an eight-hour workday (if given the opportunity at the 45 minute to 1 hour mark to stand and stretch for 3 to 5 minutes); and perform unlimited pushing and pulling within the weight restriction given, except that the claimant is only able to perform occasionally pushing and pulling with the bilateral lower extremities. Moreover, regarding the postural and environmental demands of work, I fmd that the claimant was able to perform jobs: that required no use of ladders, ropes, or scaffolds; that required only occasional use of ramps or stairs; that required occasional balancing, stooping, kneeling, crouching, and/or crawling; and that required no concentrated

> exposure to unprotected heights, hazardous or dangerous machinery. Furthermore, as to the mental demands of work, I find that the claimant was able to perform jobs: that were simple and repetitive; that required only an occasional change in the work setting during the workday; and that required only occasional contact with co-workers, and/or the general public.

(R. 15–16) That RFC determination was supported by careful consideration of the record.

In considering Plaintiff's symptoms, the ALJ followed a two-step process under which he was first required to determine whether there was "an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce [his] pain or other symptoms. (*Id.*) Then, if an underlying impairment had been shown, the ALJ would "evaluate the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [his] functional limitations." (*Id.*)

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

Beginning with Plaintiff's physical symptoms, the record indicated that Plaintiff was "formally assessed with essential hypertension, type II diabetes mellitus, joint paint of the right ankle and foot, morbid obesity, and benign hypertensive heart disease, with heart failure." (R. 17.) Further examination revealed elevated blood pressure and chest x-rays suggested evidence of cardiomegaly, though his lungs were clear. (*Id.*) Further, Plaintiff generally tested negative for chest pain, palpitations, murmurs, or other irregularities. (*Id.*) X-rays of his right foot provided evidence of Charcot foot, but no fracture, dislocation, or other injury. (*Id.*)

Notwithstanding these symptoms, however, Plaintiff's treatment with his physician remained only "conservative" and "sporadic." (*Id.*) For Plaintiff's cardiac treatment, his physician

7

prescribed only a diuretic, a beta-blocker, an Angiotensin Converting Enzyme inhibitor, and an adrenergic inhibitor. (*Id.*) As for his diabetes and obesity, Plaintiff was only advised to adjust his diet and exercise. (*Id.*) The ALJ also noted that the record contained no evidence of surgical intervention in connection with his obesity prior to his date last insured. (R. 18) For his joint pain, Plaintiff was simply prescribed over-the-counter medicine. (R. 17.)

The ALJ also considered Plaintiff's mental impairments. As to his depression and anxiety, Plaintiff reported symptoms including "depressed mood, frustration, diminished motivation, and fear of leaving the home." (R. 18.) Though the record contained no formal diagnoses or treatment prior to Plaintiff's date last insured, viewing the evidence in the light most favorable to Plaintiff's, the ALJ nonetheless deemed these impairments severe. (*Id.*)

In assessing Plaintiff's RFC, the ALJ accorded little weight to the opinions of several of Plaintiff's treating physicians, as their treatment and evaluations occurred after Plaintiff's date last insurance and as such, were not relevant to the period of adjudication in the decision. (R. 18-19.) The ALJ also found the opinions of the State agency medical consultants to be inconsistent with the record evidence, determining that Plaintiff could perform sedentary exertion work. (R. 19.)

Relying heavily on the opinion of a vocational expert, the ALJ nonetheless found that Plaintiff was unable to perform any past relevant work. (R. 20.) According to the expert, Plaintiff's prior job as a data processing technician required skilled performance of tasks that were more complex than "simple and repetitive." (*Id.*)

**Step 5**

At the final step, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. 21)

Relying on the testimony of the vocational expert, the ALJ concluded that Plaintiff could perform the requirements of an assembler, table worker, and envelope addresser. (*Id.*) All three occupations are unskilled, and there are between 50,000 and 100,000 positions in in these three occupations in the United States. (*Id.*) Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the SSA. (*Id.*)

### D. Plaintiff's Challenge

Plaintiff offers three primary arguments on appeal. First, the ALJ failed to adequately consider his obesity individually and in combination with his comorbidities at step three or in the RFC assessment. Pl. Br. at 11-21. Second, the ALJ abused her discretion in relying on her own lay medical opinion without ordering expert medical testimony. *Id.* at 21-32. Third, the ALJ offered no evidentiary rationale for her RFC determination. *Id.* at 32-40. I consider each argument in turn.

#### 1. Steps Three and Four Analysis

Plaintiff first contends that the ALJ erred at step three and subsequent steps by failing to properly consider his obesity, either individually or in conjunction with his other impairments. Pl. Br. a 11-21. It is true that, at step three, an ALJ is "required to determine whether any of a claimant's impairments, alone or in combination with other impairments, meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1." *Paladino v. Saul*, No. 18-15459, 2020 WL 525864, at *5 (D.N.J. Jan. 31, 2020). If the claimant's condition meets or medically equals a listed impairment, he is considered disabled and entitled to an award of benefits. *Id.*

Here, while the ALJ found Plaintiff's obesity to be a severe impairment at step two, she did not mention obesity at all at step three. That omission merits close scrutiny. To be sure, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination

9

with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). I find that the ALJ carefully considered Plaintiff's obesity in the context of determining his RFC, which ultimately bears on the harmlessness of any error made at step three.

In her RFC analysis, the ALJ considered the effect of Plaintiff's obesity in combination with his other impairments, particularly his cardiovascular and respiratory systems. (R. 17-18.) The ALJ estimated that Plaintiff's Body Mass Index (BMI) is "approximately 43.33 to 55.65, which is classified morbid or extreme obesity." (R. 18.) However, the ALJ also pointed out that the record contained "no evidence that [Plaintiff] required any surgical intervention in connection with [his] obesity, as well as no evidence of any ongoing treatment with a dietician, nutritionist, bariatric specialist, or other specialist" through his date last insured. (*Id.*)

Specifically, the ALJ noted that Plaintiff had "an ejection fraction of only twenty percent approximately a year *after* [his] date last insured" as well as a surgical procedure "approximately *five years after* [his] date last insured, in connection with longstanding cardiomyopathy, recurrent refractory congestive heart failure class III, severe left ventricular dysfunction, and symptomatic bradycardia." (*Id.*) (emphasis in original). Regarding his respiratory system, the ALJ also noted that Plaintiff "required treatment . . . in 2016 in connection with obstructive sleep apnea symptoms, and he demonstrated some positive findings during an internal medica consultative examination" in 2012, 2014, 2015, and 2017, "[h]owever, this treatment and these positive findings all took place *after* [Plaintiff's] date last insured of December 31, 2011." (*Id.*) (emphasis in original).

Plaintiff aptly notes the procedural error in the failure to discuss his obesity at step three. However, this Court and this Circuit have found the failure to discuss obesity during step three to be harmless error when an ALJ carefully considers a plaintiff's obesity during the RFC analysis.

10

*See, e.g.*, *Roman v. Comm'r of Soc. Sec.*, No. 19-5756, 2020 WL 6268673, at *6 (D.N.J. Oct. 26, 2020) ("Because the ALJ thoroughly considered Roman's obesity in determining his RFC, I find the judge's failure to discuss obesity in connection with step three to be harmless error."); *see also Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015) (rejecting plaintiff's argument that the ALJ failed to consider his obesity when the ALJ explicitly considered his obesity in assessing the claimant's RFC.)

Adherence to the five-step procedure is important in its own right, It must be remembered, however, that step three is a screening process that permits the ALJ to award benefits in clear cases without further analysis. The ultimate issue is still the claimant's RFC, i.e., the level of work he or she can perform despite limitations. I will not reverse when it is patently clear that the ALJ gave careful consideration to obesity when arriving at her bottom-line determination of the RFC..

**2. Expert Opinion Analysis**

Plaintiff next contends that the ALJ abused her discretion in relying on her own lay medical opinion without ordering expert medical testimony. Pl. Br. at 21-32. More specifically, Plaintiff argues that the ALJ should have consulted a cardiologist to determine whether his heart-related impairments were present prior to his date last insured, and that failure to do so was an abuse of discretion. *Id.* Plaintiff's argument fails for two reasons.

First, as Plaintiff himself notes, "[SSR 18-1] placed the decision of whether to call upon medical expert testimony exclusively at the discretion of the ALJ." Pl. Br. 25. To be sure, the Third Circuit has recognized this discretion as "complete." *Kushner v. Comm'r Soc. Sec.*, 765 F. App'x 825, 829 n. 3 (3d Cir. 2019). Second, Plaintiff's reliance on *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003) and *Walton v. Halter*, 243 F.3d 703 (3d Cir. 2001)—in which the Third Circuit held that an ALJ must consult a medical advisor to determine an onset date for a slowly

11

progressive impairment—is misplaced. In both cases, unlike here, "adequate medical records for the most relevant period were not available." *Newell*, 347 F.3d at 549 n. 7. Instead, I find this case comparable to *Kushner*, which held that the ALJ's reliance on a "wealth of medical records" obviated the need for a medical expert. 765 F. App'x 825, 830. Here, the ALJ made numerous references to Plaintiff's medical records, including his prescribed treatment, his medication regimen, as well as other negative test results during the relevant period. (R. 16-18.) Accordingly, I find the ALJ was not compelled to seek out a medical expert.

### 3. RFC Assessment

Finally, the Plaintiff argues that the ALJ's RFC determination was not supported by evidentiary rationale. Specifically, he contends that the ALJ failed to mention or properly explain his capacity/need for sedentary work, stretch breaks, and leg elevation.

I reject Plaintiff's argument that no "cogent rationale" is offered for the ALJ's RFC determination. Pl. Br. 39. The ALJ's RFC inquiry was four and a half pages long, emphasized important medical evidence (or lack thereof), and elaborated on her reasoning for discounting certain opinions. The ALJ explained how Plaintiff's treatment was "conservative" and "sporadic", how Plaintiff's heart failure had stabilized by the date last insured, and that Plaintiff had "demonstrated good diabetic control and diabetic foot care." (R. 17.)

Further, while the ALJ ultimately makes the RFC determination, Plaintiff bears the burden of proving his RFC. *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020) (citing C.F.R. §§ 416.912(a), 404.1527(d), 404.1546(c)). I find that Plaintiff has not put forth evidence suggesting his RFC was more limited than a "sedentary" designation, that the advised stretch breaks were untenable, or that he required leg-raising accommodation.

## III.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order accompanies this Opinion.

Dated: February 23, 2022

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty
United States District Judge**